| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, STATE OF COLORADO<br><br>Court Address:<br>4000 Justice Way, Ste. 2009<br>Castle Rock, CO 80109 | **EFILED Document**<br>CO Douglas County District Court 18th JD<br>Filing Date: Dec  5 2011  4:09PM MST<br>Filing ID: 41228248<br>Review Clerk: georgia courtright |
| **Plaintiff**: BANK OF AMERICA, NATIONAL ASSOCIATION, successor by merger to BAC Home Loans Servicing, LP,<br><br>**v.**<br><br>**Defendants**:  UNITED STATES SMALL BUSINESS ADMINISTRATION and GEORGE J. KENNEDY, the DOUGLAS COUNTY PUBLIC TRUSTEE. | **▲ COURT USE ONLY ▲** |
| **Attorneys for Plaintiff:**<br><br>NOTARIANNI & NOTARIANNI<br>Gregory J. Notarianni, Esq. (No. 15182)<br>1125 Seventeenth Street, Suite 2100<br>Denver, Colorado 80202<br>Phone No.:    (303) 458-7117<br>Email:        greg@notariannilaw.us<br><br>SWEETBAUM SANDS ANDERSON PC<br>Carolyn Abrahams, Esq. (No. 13254)<br>Hilary A. Anderson, Esq. (No. 40287)<br>1125 Seventeenth Street, Suite 2100<br>Denver, Colorado 80202<br>Phone No.:    (303) 296-3377<br>Email:        cabrahams@SweetbaumSands.com<br>              handerson@SweetbaumSands.com | Case No.:<br><br>Division/Ctrm: |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Bank of America, National Association, through its counsel, Notarianni & Notarianni and Sweetbaum Sands Anderson PC, and pursuant to C.R.S. §§ 13-51-101 *et seq*. and C.R.C.P. 57, submits the following Complaint for Declaratory Relief against Defendants United States Small Business Administration and George J. Kennedy, the Public Trustee of Douglas County, and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.   Plaintiff Bank of America, National Association ("Bank of America") is the successor by merger to BAC Home Loans Servicing, LP and is a national banking association conducting business in Colorado.

2.   Defendant United States Small Business Administration (the "SBA") is a United States government agency with its Colorado District office located at 721 19th Street, Suite 426, Denver, CO 80202.

3.   Defendant George J. Kennedy is named the Public Trustee of Douglas County, Colorado ("Public Trustee") with an office located at 301 Wilcox Street, Castle Rock, CO 80104.

4.   This Court has jurisdiction under C.R.S. § 13-51-105 and C.R.S. § 13-1-124(1)(a) and (c) because this action arises out of certain real estate transactions and associated financing agreements that took place in the State of Colorado and the real property involved in this matter is located in Douglas County, Colorado.

5.   The SBA may claim an interest in the Property, defined in paragraph 8 below, which is the subject of this action.

6.   The Public Trustee may claim an interest in the Property by virtue of the deeds of trust identified in paragraphs 12 and 19 of this Complaint.

7.   Venue is proper under C.R.C.P. 98(a).

## GENERAL ALLEGATIONS

8.   Mark E. Bower and Donna T. Bower own certain improved residential property located at 6195 Wilder Court, Parker, Colorado 80134, which is located in Douglas County, Colorado and is legally described as Lot 127, The Pinery Filing No. 6, Douglas County, Colorado (the "Property").

9.   On or about December 15, 2003, the Bowers executed and delivered to Franklin American Mortgage Company ("Franklin") their promissory note in the original principal amount of $252,000, which note (the "Franklin Note") was secured by a first deed of trust against the Property for the benefit of Franklin, and which deed of trust was recorded on January 5, 2004, at Reception No. 2004001538 of the records of the Douglas County Clerk and Recorder (the "Records") (the "Franklin Deed of Trust").

10. As a result of various transactions, Countrywide Home Loans, Inc. ("Countrywide") became the holder of the Franklin Note and the beneficiary under the Franklin Deed of Trust.

11. On or about December 30, 2003, the Bowers executed and delivered to US Bank, National Association ("US Bank"), their promissory note in the original principal amount of $97,000, which note was secured by a second deed of trust against the Property for the benefit of US Bank, and which deed of trust was recorded on January 16, 2004 at Reception No. 2004006945 of the Records (the "US Bank Deed of Trust").

12. In April 2007, the Bowers refinanced the existing indebtedness secured by the Franklin Deed of Trust and the existing indebtedness secured by the US Bank Deed of Trust by borrowing certain new funds from American Brokers Conduit ("ABC"). More specifically, ABC made a loan to the Bowers (the "ABC Loan") pursuant to which the Bowers executed and delivered to ABC their promissory note in the original principal amount of $372,000 (the "ABC Note"), which note was secured by a deed of trust against the Property for the benefit of ABC, and which deed of trust was recorded on May 1, 2007 at Reception No. 2007035210 of the Records (the "ABC Deed of Trust"). A copy of the ABC Deed of Trust is attached hereto as **Exhibit 1**.

13. As a result of various transactions, Bank of America is the current holder of the ABC Note and the current beneficiary under the ABC Deed of Trust. *See* Assignment of Deed of Trust dated April 26, 2011, recorded on July 6, 2011 at Reception No. 2011040824 of the Records ("ABC Assignment"), attached hereto as **Exhibit 2**; Certificate of Merger of BAC Home Loans Servicing, LP into Bank of America, National Association, filed June 28, 2011 with the Texas Secretary of State, attached hereto as **Exhibit 3**.

14. As part of the refinancing transaction described in paragraph 12 above (the "Refinancing Transaction"), it was understood and agreed by and between the Bowers and ABC that the proceeds from the ABC Loan would be used to pay off the total indebtedness secured by the Franklin Deed of Trust and by the US Bank Deed of Trust, that the Franklin Deed of Trust and the US Bank Deed of Trust would both be released of record, and that the ABC Deed of Trust would be in a first priority lien position on the Property.

15. The Bowers represented to ABC or its agent that the ABC Deed of Trust would be in a first lien position against the Property and that no other liens were recorded against the Property other than the lien of the Franklin Deed of Trust and the lien of the US Bank Deed of Trust.

16. The Refinancing Transaction was closed on or about April 30, 2007, at which time ABC paid to Countrywide the sum of $236,301.38, in payment of the total indebtedness secured by the Franklin Deed of Trust, and ABC paid to US Bank the sum of $97,754.86, in payment of the total indebtedness secured by the US Bank Deed of Trust, in exchange for a release of the Franklin Deed of Trust and a release of the US Bank Deed of Trust, respectively.

17. The Franklin Deed of Trust and US Bank Deed of Trust were then released from the Property.

18. In 2010, approximately three years after the Refinancing Transaction was completed and the ABC Deed of Trust was recorded against the Property, the Bowers defaulted under the ABC Note and the ABC Deed of Trust, as a result of which foreclosure proceedings under the ABC Deed of Trust were commenced with the Douglas County Public Trustee.

19. In connection with the commencement of foreclosure proceedings, it was discovered that the SBA claimed to be the holder of a deed of trust against the Property which was recorded on August 21, 2002 at Reception No. 2002083801 of the Records (the "SBA Deed of Trust"), which deed of trust purports to secure payment of a loan from the SBA to the Bowers in the original principal amount of $235,000 (the "SBA Loan").

20. The SBA Deed of Trust was modified by and subject to a Subordination Agreement dated December 2, 2003, recorded on January 5, 2004 at Reception No. 2004001539 of the Records (the "Subordination Agreement"), a copy of which is attached as **Exhibit 4**.

21. By virtue of the Subordination Agreement, the SBA subordinated the priority of the SBA Deed of Trust to the lien of the Franklin Deed of Trust, such that the Franklin Deed of Trust would be a first lien against the Property and that the SBA Deed of Trust would be junior and subordinate to the lien of the Franklin Deed of Trust.

22. Upon information and belief, the SBA asserts that the SBA Deed of Trust is in a first priority lien position against the Property.

23. Bank of America is unable to proceed with foreclosure proceedings under the ABC Deed of Trust unless and until the relative rights and priorities of Plaintiff and Defendant, under the ABC Deed of Trust and the SBA Deed of Trust, respectively, are determined.

## CLAIM FOR RELIEF
### (Declaratory Relief – Equitable Subrogation)

24. Bank of America realleges and incorporates by reference the allegations in paragraphs 1 through 23, inclusive of this Complaint.

25. Under C.R.S. § 13-51-105 and C.R.C.P. 57, any person interested in a deed or whose rights, status, or other legal relations are affected by a statute or contract may have determined any question of validity arising under the instrument or contract and obtain a declaration of rights, status, or other legal relations thereunder.

26. At the time of closing of the Refinancing Transaction, the proceeds from the ABC Loan were used to paid off and discharge the entire indebtedness secured by the Franklin Deed of Trust and the US Bank Deed of Trust to protect ABC's interest; ABC was not acting as a volunteer.

27. ABC was not liable for the Bowers' debt to Countrywide (which was secured by the Franklin Deed of Trust) or to US Bank (which was secured by the US Bank Deed of Trust).

28. At the time of closing of the Refinancing Transaction, it was intended that the ABC Deed of Trust be a first deed of trust against the Property. ABC would not have agreed to provide the ABC Loan to the Bowers unless it was assured the ABC Deed of Trust would be in the first priority lien position on the Property.

29. ABC had no actual knowledge of the SBA Deed of Trust when the Refinancing Transaction was closed and the Franklin Deed of Trust and the US Bank Deed of Trust were paid off.

30. Based on the payoff of the Franklin Deed of Trust, Bank of America is entitled to be equitably subrogated to the lien priority of the Franklin Deed of Trust to the extent of the total payoff to Countrywide on April 30, 2007, in the amount of $236,301.38, plus interest, costs, and fees as permitted under the Franklin Deed of Trust.

31. By virtue of the Subordination Agreement, the SBA Deed of Trust was not a first priority lien against the Property, but instead was a second lien against the Property subordinate to the Franklin Deed of Trust.

32. The Court should declare the ABC Deed of Trust, and any renewals, extensions, or amendments thereof, to be in the first priority lien position and prior and superior to the lien of the SBA Deed of Trust to the extent of the total payoff amount paid to Countrywide on April 30, 2007, in the amount of $236,301.38, plus interest, costs, and fees as permitted under the Franklin Deed of Trust.

33. The Court should declare that the ABC Deed of Trust, to the extent of any remaining indebtedness on the ABC Note, continues to hold the third priority lien position on the Property.

34. Declaring the priority of the ABC Deed of Trust, as set forth in Paragraphs 32 and 33, above, will not prejudice the rights of the SBA.

35. The Bowers are currently in default on the ABC Note and ABC Deed of Trust. Until the priority of the ABC Deed of Trust and SBA Deed of Trust is determined, Bank of America cannot initiate a foreclosure action. Thus, an actual and immediate controversy exists between the parties.

36. A declaration under C.R.S. § 13-51-105 and C.R.C.P. 57 as to the priority of the ABC Deed of Trust will terminate this controversy.

37. All necessary parties under C.R.C.P. 57(j) are before the Court and no declaration shall prejudice the rights of persons not parties to this proceeding.

## JURY DEMAND

38. Bank of America does not demand a jury trial.

WHEREFORE, Plaintiff Bank of America, National Association respectfully requests that the Court enter judgment in its favor and against Defendants United States Small Business Administration and George J. Kennedy, the Public Trustee of Douglas County, and:

1. Declare that the ABC Deed of Trust, and any renewals, extensions, and amendments thereof, is in the first priority lien position on the Property and is prior and superior to the lien of the SBA Deed of Trust, to the extent of the total payoff to Countrywide on April 30, 2007, in the amount of $236,301.38, plus interest, costs, and fees as permitted under the Franklin Deed of Trust;

2. Declare that the ABC Deed of Trust, to the extent of the remaining indebtedness on the ABC Note, continues to hold the third priority lien position on the Property; and

3. Grant Plaintiff such other and further relief as the Court deems just and proper.

DATED this 5th day of December 2011.

Respectfully submitted,

NOTARIANNI & NOTARIANNI

By: *S/Gregory J. Notarianni*
   Gregory J. Notarianni

SWEETBAUM SANDS ANDERSON PC

By: *S/Hilary A. Anderson*
   Carolyn Abrahams
   Hilary A. Anderson

**Attorneys for Plaintiff**

Plaintiff's Address:
400 National Way, SV-35
Simi Valley, CA 93065

2007035210 **RECORDED** Document
CO Douglas County District Court 18th JD
Filing Date: Dec 5 2011 4:09PM MST
**Filing** ID: 41228248
OFFICIAL RECORDS
DOUGLAS COUNTY, CO — **Review Clerk: georgia courtright**
JACK ARROWSMITH
CLERK & RECORDER
RECORDING FEE:        $81.00
                      16 PGS

# 2007035210
05/01/2007 02:01 PM

Return To:
American Brokers Conduit
4650 Regent Blvd., Suite 100
IRVING, TX 75063
NORTHWEST TITLE & ESCROW
   2000 S. COLORADO BLVD
   SUITE 2-220
   DENVER, CO 80222
Prepared By:
dpisarra
6455 So Yosemite Street
Suite 700
Greenwood Village, CO
00111

-------------------- [Space Above This Line For Recording Data] --------------------

## DEED OF TRUST

MIN 100024200017352168

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated April 24, 2007
together with all Riders to this document.
(B) "Borrower" is Donna T. Bower and Mark E. Bower

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Brokers Conduit

Lender is a Corporation
DOC #:321261                    APPL #:0801735216
COLORADO -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3006 1/01

-6A(CO) (0005)
Page 1 of 15        Initials: 
VMP MORTGAGE FORMS - (800)521-7291

816 591-16

Exhibit 1
1 of 16

organized and existing under the laws of State of New York
Lender's address is 538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is the Public Trustee of Douglas                          County, Colorado.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated April 24, 2007
The Note states that Borrower owes Lender Three Hundred Seventy Two Thousand and No/100                                                                          Dollars
(U.S. $372,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2027

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:321262            APPL #:0001735216

-6A(CO) (0045)                        Page 2 of 15                           Form 3006  1/01

Exhibit 1
2 of 16

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                    of Douglas                                    :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DISCRIPTION

Parcel ID Number:  650707304043                              which currently has the address of
6195 Wilder Court                                                                              [Street]
Parker                                                  [City], Colorado  80134          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

DOC #:321263                    APPL #:0001735216            Initials: _____
-6A(CO) (0000)                              Page 3 of 15                        Form 3006  1/01

Exhibit 1
3 of 16

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow

DOC  #:321264                    APPL  #:0001735216

[_]_-6A(CO) (0005)               Page 4 of 15          Initials: _____          Form 3006  1/01

Exhibit 1
4 of 16

Items." At origination, or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless

Exhibit 1
5 of 16

Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

DOC #:321266                    APPL #:0002735216

-6A(CO) (0005)                  Page 6 of 15                          Form 3006   1/01

Exhibit 1
6 of 16

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this

DOC  #:321267                    APPL #:0001735221              Initials _____             Form 3006  1/01
        -6A(CO)  (0005)                          Page 7 of 15

Exhibit 1
7 of 16

Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange

DOC  #:321268                    APPL #:0001735216

-6A(CO) (0005)                   Page 8 of 15                    Form 3006   1/01

Exhibit 1
8 of 16

for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

DOC #:322269                           APPL #:0801735225

-6A(CO) (0005)                         Page 9 of 15                              Form 3006  1/01

Exhibit 1
9 of 16

Lender's Interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender

DOC #:321270                    APPL #:0001735216

-6A(CO) (0005)                  Page 10 of 15          Form 3006 1/01

Initials: [signature]

Exhibit 1
10 of 16

shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check

DOC #:322271                APPL #:0801735216

-6A(CO) (0008)                    Page 11 of 15                    Form 3006  1/01

Exhibit 1
11 of 16

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

DOC  #:321272                    APPL  #:0001735216

-6A(CO) (0005)                   Page 12 of 15                   Form 3006  1/01

Exhibit 1
12 of 16

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly canceled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

DOC #:321273                    APPL #:0001735216

-6A(CO) (0005)                  Page 13 of 15                    Form 3006 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____       _Donna T. Bower_____ (Seal)
                                Donna T. Bower            -Borrower

_____       _Mark E. Bower_____ (Seal)
                                Mark E. Bower             -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                        -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                        -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                        -Borrower

DOC #:121274            APPL #:0001735216

-6A(CO) (0005)              Page 14 of 15               Form 3006  1/01

Exhibit 1
14 of 16

STATE OF COLORADO,   DOUGLAS                                    County ss:

    The foregoing instrument was acknowledged before me this    24th day of April, 2007           ,
by   Donna T. Bower and Mark E. Bower

    Witness my hand and official seal.

My Commission Expires:  5. 21. 08

Notary Public

EARL COOKSON
Notary Pub'ic
State of Colorado

DOC #:321275          APPL #:0001735216

-6A(CO)  (0302)          Page 15 of 15          Initials:          Form 3006  1/01

Exhibit 1
15 of 16

EXHIBIT "A"

A PARCEL OF LAND SITUATED IN THE STATE OF COLORADO, COUNTY OF DOUGLAS TO WIT:

LOT 127, THE PINERY FILING NO. 6, COUNTY OF DOUGLAS, STATE OF COLORADO.

Exhibit 1
16 of 16

#2011040824, 07/06/2011 at 03:35:09 PM, 1 OF 2, Recording Fee $16.00
Electronically Recorded Official Records Douglas County, CO Jack Arrowsmith,
Clerk & Recorder

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Dec 5 2011 4:09PM MST
Filing ID: 41228248
Review Clerk: georgia courtright

## ASSIGNMENT OF DEED OF TRUST

Date of Assignment:          April 26, 2011

Assignor:                    Mortgage Electronic Registration Systems ("MERS") as nominee for Lender and its successors and/or assigns

Assignee:                    BAC Home Loans Servicing, L.P.

Date of Deed of Trust:       April 24, 2007

Recording Date:              May 1, 2007

County of Recording:         Douglas

Recorded:                    At Reception No. 2007035210

KNOW ALL MEN BY THESE PRESENTS that on April 24, 2007, Donna T. Bower and Mark E. Bower, did grant, bargain, sell and convey the property described in the Deed of Trust to the Public Trustee of the County in which said Deed of Trust was recorded, which property was to be held in trust, by such Public Trustee for the use and benefit of Assignor, to secure the payment of a Promissory Note for the original principal sum of $372,000.00, together with interest.

NOW THEREFORE, in consideration of the sum of ten dollars and other valuable consideration, paid to the Assignor, the receipt, adequacy and sufficiency of which is hereby acknowledged, Assignor hereby assigns unto the said Assignee, the said Deed of Trust and Promissory Note secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all powers and of all the covenants and proviso therein contained, and said Assignor hereby grants and conveys unto the said Assignee, all of Assignor's beneficial right, title and interest, under the Deed of Trust, in and to the following described property, situated in the County of Douglas, State of Colorado, to wit:

A PARCEL OF LAND SITUATED IN THE STATE OF COLORADO, COUNTY OF DOUGLAS TO WIT:  LOT 127, THE PINERY FILING NO, 6, COUNTY OF DOUGLAS, STATE OF COLORADO.

also known by street and number as: 6195 Wilder Court, Parker, CO  80134

TO HAVE AND TO HOLD the said Deed of Trust and Promissory Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust and Promissory Note.

IN WITNESS WHEREOF, the Assignor has executed this assignment the day and year first above written

ASSIGNOR:                    Mortgage Electronic Registration Systems ("MERS") as nominee for Lender and its successors and/or assigns

By:
Name: Cecilia Rodriguez
Title: Assistant Secretary

STATE OF _____ }
                       } ss.
COUNTY OF _____ }

The foregoing instrument was acknowledged before me on _____ 201_ by _____ as
_____ of Mortgage Electronic Registration Systems ("MERS") as nominee for Lender and its successors and/or assigns, Assignor.

Witness my hand and seal.
My Commission Expires: _____

                                                    (See attached)

{SEAL}                       Notary Public

                                                    (P  5/3/11

Return to:
Crystal Gutierrez., re: 10-06654
Castle Stawiarski, LLC
999 18ᵗʰ St., Ste. 2201
Denver, CO 80202
MERS MIN#: 100024200017352168
MERS Phone #: 1-888-679-MERS (6377)

Exhibit 2
1 of 2

#2011040824, 2 OF 2

## ACKNOWLEDGMENT

State of California
County of _____Ventura_____)

On _May_ _3_ , 2011 _____ before me, __Darryl Brown, Notary Public_____
                                          (Insert name and title of the officer)

personally appeared ___Cecilia Rodriguez_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) (s)are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
DARRYL BROWN
Commission # 1812305
Notary Public - California
Los Angeles County
My Comm. Expires Oct 3, 2012
```

Signature _____ (Seal)

*Attached to: Assignment of Deed of Trust*
*Re: Bower and Bower*

*5/3/11*

Exhibit 2
2 of 2

Form 622
(Revised 12/08)
Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: See instructions

**Certificate of Merger**
**Combination Merger**
**Business Organizations Code**

This space reserved for office use.

EFILED Document **F I L E D**
CO Douglas County District Court 18th JD **In the office of the**
Filing Date: **Secretary of State of Texas**
Filing ID: 41228248 **JUN 28 2011**
Review Clerk: geo

**Corporations Section**

## Parties to the Merger

Pursuant to chapter 10 of the Texas Business Organizations Code, and the title applicable to each domestic filing entity identified below, the undersigned parties submit this certificate of merger.

The name, organizational form, state of incorporation or organization, and file number, if any, issued by the secretary of state for each organization that is a party to the merger are as follows:

**Party 1:**

BAC Home Loans Servicing, LP.
*Name of Organization*
The organization is a  limited partnership   It is organized under the laws of
*Specify organizational form (e.g., for-profit corporation)*

Texas   USA   The file number, if any, is  13186910
*State*   *Country*   *Texas Secretary of State file number*

Its principal place of business is  6400 Legacy Drive   Plano   TX
*Address*   *City*   *State*

☐ The organization will survive the merger.   ☒ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization.  The new name is set forth below.

_____
*Name as Amended*

**Party 2:**

Bank of America, National Association,
*Name of Organization*
The organization is a  national banking association   It is organized under the laws of
*Specify organizational form (e.g., for-profit corporation)*

United States   The file number, if any, is  0000000132
*State*   *Country*   *Texas Secretary of State file number*

Its principal place of business is  101 South Tryon Street   Charlotte   NC
*Address*   *City*   *State*

☒ The organization will survive the merger.   ☐ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization.  The new name is set forth below.

_____
*Name as Amended*

**Party 3:**

_____
*Name of Organization*
The organization is a   It is organized under the laws of
*Specify organizational form (e.g., for-profit corporation)*

Form 622

{TX150BOC - 8/1/2008 C.T. System Online}

5

**RECEIVED**

**JUN 28 2011**

**Secretary of State**

Exhibit 3
1 of 4

The file number, if any, is

| *State*  *Country* | | *Texas Secretary of State file number* |
|---|---|---|

Its principal place of business is:

| *Address* | *City* | *State* |
|---|---|---|

☐ The organization will survive the merger.     ☐ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization. The new name is set forth below:

*Name as Amended:*

## Plan of Merger

☐ The plan of merger is attached.

*If the plan of merger is not attached, the following statements must be completed.*

### Alternative Statements

In lieu of providing the plan of merger, each domestic filing entity certifies that:

1. A signed plan of merger is on file at the principal place of business of each surviving, acquiring, or new domestic entity or non-code organization that is named in this form as a party to the merger or an organization created by the merger.

2. On written request, a copy of the plan of merger will be furnished without cost by each surviving, acquiring, or new domestic entity or non-code organization to any owner or member of any domestic entity that is a party to, or created by the plan of merger and, if the certificate of merger identifies multiple surviving domestic entities or non-code organizations, to any creditor or oblige of the parties to the merger at the time of the merger if a liability or obligation is then outstanding.

*Complete item 3B if the merger effected changes to the certificate of formation of a surviving filing entity.*

3A.  No amendments to the certificate of formation of any surviving filing entity that is a party to the merger are effected by the merger.

3B. ☐ The plan of merger effected changes or amendments to the certificate of formation of:

*Name of filing entity effecting amendments*

The changes or amendments to the filing entity's certificate of formation, other than the name change noted previously, are stated below.

*Amendment Text Area:*

|  |
|---|
|  |

4.  Organizations Created by Merger
The name, jurisdiction of organization, principal place of business address, and entity description of each entity or other organization to be created pursuant to the plan of merger are set forth below.  The certificate of formation of each new domestic filing entity to be created is being filed with this certificate of merger.

Exhibit 3
2 of 4

| Name of New Organization 1 | | Jurisdiction | Entity Type (See Instructions) |
|---|---|---|---|
| Principal Place of Business Address | City | | State   Zip Code |

| Name of New Organization 2 | | Jurisdiction | Entity Type (See Instructions) |
|---|---|---|---|
| Principal Place of Business Address | City | | State   Zip Code |

| Name of New Organization 3 | | Jurisdiction | Entity Type (See Instructions) |
|---|---|---|---|
| Principal Place of Business Address | City | | State   Zip |

## Approval of the Plan of Merger

The plan of merger has been approved as required by the laws of the jurisdiction of formation of each organization that is a party to the merger and by the governing documents of those organizations.

☐ The approval of the owners or members of _____

*Name of domestic entity.*

was not required by the provisions of the BOC.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is accepted and filed by the secretary of state.

B. ☒ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is:  July 1, 2011

C. ☐ This document takes effect on the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

## Tax Certificate

☐    Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid by the non-surviving filing entity.

☒    In lieu of providing the tax certificate, one or more of the surviving, acquiring or newly created organizations will be liable for the payment of the required franchise taxes.

Exhibit 3
3 of 4

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument. The undersigned certifies that the statements contained herein are true and correct, and that the person signing is authorized under the provisions of the Business Organizations Code, or other law applicable to and governing the merging entity, to execute the filing instrument.

Date: **06/28/2011**

BAC Home Loans Servicing, LP
Merging Entity Name.

Signature of authorized person (see instructions);

Tim Huval, President and CEO, BAC GP, LLC, General Partner.
Printed or typed name of authorized person.

Bank of America, National Association
Merging Entity Name.

Signature of authorized person (see instructions)

Merrily Gerrish, Associate General Counsel, Assistant Secretary.
Printed or typed name of authorized person.

Merging Entity Name.

Signature of authorized person (see instructions).

Printed or typed name of authorized person

Form 622
TX18080C - 01/01/2009 C T System Online.

Exhibit 3
4 of 4

When Recorded Return To:

United States
Small Business Administration
Attn: collateral
2719 North Air Fresno Drive, Suite 107
Fresno, CA  93727-1547

SBA Loan Name:  edge solutions Inc.
SBA Loan Number:  555-966-4009

EFILED
CO Dou......... Court 18th JD
Filing Date: Dec 5 2011 4:09PM MST
Filing ID: 41228248
Review ................ right
OFFICIAL RECORDS
DOUGLAS COUNTY CO
CAROLE R. MURRAY
CLERK & RECORDER
RECORDING FEE:      $16.00
                              3 PGS

# 2004001539
01/05/2004 04:10 PM

## SUBORDINATION AGREEMENT

THIS AGREEMENT is dated for reference December 2, 2003, and is between Mark E. Bower and Donna T. Bower, owner(s) of the land described in the Deed of Trust/Mortgage referenced below ("Owner"), Franklin American Mortgage ("Lender") and the United States Small Business Administration, an agency duly created under and by virtue of an Act of Congress, having its principal office in Washington, in the District of Columbia, and a Commercial Loan Servicing Center at 2719 North Air Fresno Drive, Suite 107, Fresno, California 93727, ("SBA").

RECITALS:

Owner executed a deed of trust/mortgage,, to secure a note in the sum of $235,000.00 in favor of SBA ("SBA Deed of Trust"). The SBA Deed of Trust was recorded on August 21, 2002 in the Official Records of Douglas County, Colorado, as Document Number 2002-083801.

Owner has also executed, or is about to execute, a deed of trust and note in the sum of $252,000.00, dated 12|15|03, in favor of Lender. ("Lender's Deed of Trust"). Lender's Deed of Trust is to be recorded concurrently herewith.

As a condition precedent to Lender's performance the SBA Deed of Trust must be subordinated to the Lender's Deed of Trust. SBA is willing to subordinate the lien of the SBA Deed of Trust provided it retains its lien priority with respect to all other legal or equitable interests in the property.

AGREEMENT:

In consideration of the mutual benefits accruing to the parties and to induce Lender to make a loan to Owner, it is hereby agreed and understood as follows:

(1)   Lender's Deed of Trust, and any renewals or extensions

CO DT/MTG Subordination - Real Property - 98.1

Exhibit 4
1 of 3

thereof, shall be a lien on the property prior to the lien of the SBA Deed of Trust.

(2)  Lender would not make its loan without this subordination agreement.

(3)  Lender will not advance funds under its deed of trust except such disbursements which become necessary to protect its security interest and which are recoverable from Owner under the terms of its deed of trust.  Any lien securing funds advanced or disbursed contrary to this paragraph or monies due as a result of a default interest rate shall be subordinate to the lien of the SBA Deed of Trust.

(4)  This agreement shall be the whole and only agreement with regard to the subordination of the SBA Deed of Trust to Lender's Deed of Trust.

(5)  Except as expressly provided herein, this agreement shall not operate or be construed to alter the priority of the SBA Deed of Trust with respect to any legal or equitable interest in the property.  Owner and Lender shall hold SBA harmless from any impairment of its lien that is occasioned by this subordination.

(6)  SBA's agreement to subordinate its lien interest to that of the Lender is expressly conditioned upon Lender's, Borrower's and Guarantor's execution of this subordination agreement.  This subordination agreement is null and void if not duly executed by the foregoing parties.

(7)  A default in the obligation secured by the Lender's Deed of Trust may be cured (including purchase of the property at foreclosure sale) by the SBA via cash, certified funds or a United States Treasury check, at the option of the SBA. Provisions for a so-called "default rate of interest" or any similar penalty payment that may be contained within the Lender's Deed of Trust are inapplicable to SBA.

(8)  All proceeds of Lender's loan shall be applied to satisfy debt secured by a lien(s) presently superior to the lien of the SBA Deed of Trust, plus customary closing costs.  Any other use of proceeds not described herein shall void this agreement.

(9)  The amount secured by the SBA deed of trust shall not exceed $70,000.00 unless the obligation secured by the lender's deed of trust is satisfied.

CO DT/MTG Subordination – Real Property – 98.1

Exhibit 4
2 of 3

_Mark E. Bower_
Mark E. Bower, Owner

_Donna T Bower_
Donna T. Bower, Owner

LENDER

ADMINISTRATOR, UNITED STATES
SMALL BUSINESS ADMINISTRATION,
AN AGENCY OF THE UNITED STATES

By: _____

12/13/03

Gary A. Wamhof
Sr. Loan Specialist

[type or print name underneath line]

(All signatures must be acknowledged)

State of California
County of Fresno

On Dec. 3, 2003 before me, Sandra Winters, a
Notary Public, personally appeared Gary A. Wamhof,
personally known to me to be the person whose name is subscribed to
this instrument and acknowledged to me that he/~~she~~ executed this
instrument in his/~~her~~ authorized capacity, and that by his/~~her~~
signature on the instrument the United States Small Business
Administration executed the instrument.

WITNESS my hand and official seal.

Signature _Sandra Winters_



SANDRA WINTERS
Commission # 1410264
Notary Public - California
Fresno County
My Comm. Expires Apr 22, 2007

CO DT/MTG Subordination - Real Property - 98.1

3

Exhibit 4
3 of 3

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, STATE OF COLORADO<br><br>Court Address:<br>4000 Justice Way, Ste. 2009<br>Castle Rock, CO 80109 | EFILED Document<br>CO Douglas County District Court 18th JD<br>Filing Date: Dec 5 2011 4:09PM MST<br>Filing ID: 41228248<br>Review Clerk: georgia courtright |
| **Plaintiff**: BANK OF AMERICA, NATIONAL ASSOCIATION, successor by merger to BAC Home Loans Servicing, LP,<br><br>v.<br><br>**Defendants**:  UNITED STATES SMALL BUSINESS ADMINISTRATION and GEORGE J. KENNEDY, the DOUGLAS COUNTY PUBLIC TRUSTEE. | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiff:**<br><br>NOTARIANNI & NOTARIANNI<br>Gregory J. Notarianni, Esq. (No. 15182)<br>1125 Seventeenth Street, Suite 2100<br>Denver, Colorado 80202<br>Phone No.:    (303) 458-7117<br>Email:        greg@notariannilaw.us<br><br>SWEETBAUM SANDS ANDERSON PC<br>Carolyn Abrahams, Esq. (No. 13254)<br>Hilary A. Anderson, Esq. (No. 40287)<br>1125 Seventeenth Street, Suite 2100<br>Denver, Colorado 80202<br>Phone No.:    (303) 296-3377<br>Email:        cabrahams@SweetbaumSands.com<br>          handerson@SweetbaumSands.com | Case No.:<br><br>Division/Ctrm: |

**DISTRICT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1.    This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case.  It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.

2.          Check the boxes applicable to this case.

☒          Simplified Procedure under C.R.C.P. 16.1 **applies** to this case because this party does not
seek a monetary judgment in excess of $100,000.00 against another party, including
attorney fees, penalties or punitive damages but excluding interest and costs and because
this case is not a class action or forcible entry and detainer, Rule 106, Rule 120, or other
expedited proceeding.

☐          Simplified Procedure under C.R.C.P. 16.1 **does not apply** to this case because (check one
box below identifying why 16.1 does not apply):

          ☐      This is a class action or forcible entry and detainer, Rule 106, Rule 120, or other
          similar expedited proceeding,          **or**
          ☐      This party is seeking a monetary judgment for more than $100,000.00 against
          another party, including any attorney fees, penalties or punitive damages, but
          excluding interests and costs (see C.R.C.P. 16.1(c)),          **or**
          ☐      Another party has previously stated in its cover sheet that C.R.C.P. 16.1 does not
          apply to this case.

3.          ☐ This party makes a **Jury Demand** at this time and pays the requisite fee.  See
C.R.C.P. 38.  (Checking this box is optional.)

          Dated this 5th day of December, 2011.

                                        By:  *S/Gregory J. Notarianni*
                                                Gregory J. Notarianni


                                        By:  *S/Hilary A. Anderson*
                                                Carolyn Abrahams
                                                Hilary A. Anderson

---

### NOTICE

✓  This cover sheet must be filed in all District Court Civil (CV) Cases.  Failure to file
this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's
show cause order requiring its filing.
✓  This cover sheet must be served on all other parties along with the initial pleading of a
complaint, counterclaim, cross-claim, or third party complaint.
✓  This cover sheet shall not be considered a pleading for purposes of C.R.C.P. 11.